IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| NICHOLAS L. KOLAKOVITCH, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 05-6218-AS |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

KATHRYN TASSINARI
Harder, Wells, Baron & Manning
474 Willamette, Suite 200
Eugene, OR 97401

      Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

JOANNE E. DANTONIO
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

ASHMANSKAS, Magistrate Judge:

Plaintiff Nicholas L. Kolakovich seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision should be affirmed.

## BACKGROUND

Born in 1955, Kolakovich completed high school and two years of college. Tr. 68, 74.[1] Between 1987 and 2003 Kolakovich worked as a clerk, engine repair person, dishwasher, janitor, laborer, forklift driver and cook. Tr. 69.

Kolakovich alleges disability since November 7, 2003, due to bipolar affective disorder. Tr. 68. After Kolakovich's hearing before an Administrative Law Judge (ALJ), the ALJ found that Kolakovich could return to his past relevant work. Tr. 18. Kolakovich seeks review of this finding.

## MEDICAL BACKGROUND

Kolakovich reports a history of unstable moods and explosive temper. Tr. 77. In December 2003, Kolakovich was hospitalized for suicidal ideation and discharged with diagnoses of adjustment disorder and intermittent alcohol abuse. Tr. 142 - 148. Kolakovich subsequently received care at Douglas County Mental Health (DCMH). DCMH physicians,

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on December 15, 2005 (Docket #7).

2 - OPINION AND ORDER

therapists, and nurse practitioners administered Kolakovich's care between January 29, 2004, and November 2004, when the record closes. Tr. 191 - 226, 254 - 268, 273 - 274. During this period, DCMH physicians diagnosed bipolar disorder. Tr. 192, 212, 255, 256, 263, 267. They did not find Kolakovich homicidal, psychotic, delusional, or consistently suicidal. Tr. 255, 256, 263, 267, 273, 274. DCMH physicians noted "intermittent explosive disorder" and "social phobia" as rule-out diagnoses only. Tr. 192, 212. In March 2004, an evaluating psychologist suggested diagnoses of bipolar disorder and schizoid personality disorder. Tr. 164.

Kolakovich's prevailing diagnosis is bipolar disorder. The diagnoses cited above are the only definitive diagnoses reflected in the record. Tr. 164, 145, 192, 212, 255, 256, 263, 267.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Kolakovich challenges the ALJ's evaluation of the evidence and his conclusions at step four.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(I), 416.920(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the

impairment equals a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments.  20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098.  If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity.  *Id.*   If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§  404.1566, 404.1520(g), 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found Kolakovich "not fully credible,"  and suggested that "the most significant barrier to employment would appear to be the claimant's extreme verbal belligerence."  Tr. 21, 22.  The ALJ evaluated Kolakovich's RFC:

> The claimant retains the residual functional capacity to do exertional activity without limitation.  He cannot work with the general public and can tolerate only minimal interaction with and

4 - FINDINGS AND RECOMMENDATION

> proximity to co-workers.  He can handle only minimal contact with
> supervisors.  It is recommended that he not work around dangerous
> hazards.

Tr. 22.

At step four, the ALJ found that Kolakovich's  RFC did not preclude him from performing his past relevant work as a dishwasher and "sweeper/cleaner."  Tr. 23.  The ALJ solicited testimony from a vocational expert who confirmed that  Kolakovich could return to this work.  Tr. 22, 232 - 235.  Accordingly, the ALJ determined that  Kolakovich was not disabled under the Act at any time through the date of his decision.  Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)).  The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Magallanes*, 881 F.2d at 750; *see* also *Batson*, 359 F.3d at 1193.

## DISCUSSION

Kolakovich contends the ALJ failed to accurately assess his RFC because the ALJ improperly discredited Kolakovich's  testimony, improperly considered the opinions of two

physicians, and improperly addressed lay witness testimony.  Kolakovich then claims that in

relying upon this RFC, the ALJ made an inaccurate finding that Kolakovich could return to his

past relevant work at step four.

**1.  Kolakovich's Credibility**

Kolakovich indicates he will contest the ALJ's credibility finding, but does not present

this argument in his brief.  (Plaintiff's Opening Brief, 2.)

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court

to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*,

50 F.3d 748, 750 (9th Cir. 1995).  In construing credibility findings, the ALJ may consider

objective medical evidence and the claimant's treatment history, as well as the claimant's daily

activities, work record, and observations of physicians and third parties with personal knowledge

of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as

weighing inconsistent statements regarding symptoms by the claimant.  *Id.*

The ALJ's reasoning for suspecting Kolakovich's credibility is based upon references in

the record to Kolakovich's possible malingering or feigning of symptoms, allegations allegedly

without medical basis, and Kolakovich's criminal history and antisocial personality traits.  Tr. 17,

21.

In August 2004 Kolakovich's therapist noted:

> Client's presentation today presents a marked departure from his
> recent demeanor with the client appearing unshaven for the first
> time, obviously angry, using vulgar language, and providing the
> writer with an extensive, perhaps exaggerated, list of complaints.
> While this may represent a genuine deterioration of function, it

> may also represent a manipulative effort on the part of this client to
> appear to have worsened in order to change a previously effective
> medication regime or  to strengthen his case for Social Security
> Disability.

Tr. 260.

If a claimant presents evidence of malingering, as above, the ALJ may find the claimant not credible.  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (citing *Cotton v. Bowen*, 700 F.2d 1043, 1047 (9th Cir. 1986)).  The court should not overturn an ALJ's inferences reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.

The ALJ next  noted that no objective medical evidence supports Kolakovich's alleged concentration difficulties. Tr. 21.  In June 2004 Kolakovich's treating psychiatrist, Dr. Beck, administered a "mini-mental status exam," which found no measurable cognitive deficiencies.  Beck noted Kolakovich was relieved by this result.  Tr. 267.  Beck indicated the possibility of "depressive dementia," but did not conclusively find this.  *Id.*  The ALJ may not make a credibility finding based entirely upon a lack of objective medical evidence, but he may consider the treatment record as one of several factors in determining a claimant's credibility regarding his symptoms.  *Connett v. Barnhart*, 340 F.3d 871, 873 - 874 (9th Cir. 2003),  *Smolen*, 80 F.3d at 1284.  If there is no evidence of malingering, an ALJ must give sufficiently specific reasons for rejecting a claimant's symptom testimony.  *Benton*, 331 F.3d at 1040, (citing *Cotton*, 700 F.2d at 1047). Because Kolakovich's record suggests malingering, this standard does not apply.  *Id.*  The ALJ appropriately cited Kolakovich's normal cognitive exam in finding Kolakovich's complaint regarding cognition unjustified.

Finally, the ALJ noted Kolakovich's criminal history, including armed robbery.  Tr. 21.

7 - FINDINGS AND RECOMMENDATION

Because the ALJ may consider dishonest behavior by the claimant in evaluating credibility, observations regarding established criminal behavior are appropriate. *Smolen*, 80 F.3d at 1284.

For these reasons, the ALJ's credibility finding is based upon a rational reading of the record under the proper legal standards. *Magallanes*, 881 F.2d at 750, *Batson*, 359 F.3d at 1193. The ALJ's credibility finding should be sustained.

## 2. Medical Source Statements

Kolakovich contends the ALJ improperly evaluated the opinions of physician Dr. Tavakoli and evaluating psychologist Dr. Kirkendall. Each is addressed in turn.

### a. Dr. Tavakoli

Contrary to the Commissioner's assertion, the record establishes that Tavakoli is a treating physician. Dr. Tavakoli was a member of Kolakovich's treatment team at DCMH. Tr. 273. Kolakovich received medication management consultation with DCMH physicians at regular one month intervals between January and November 2004. Tr. 159, 199, 209 - 213, 255 - 256, 259, 263 - 264, 274, 267. Tavakoli evaluated and treated Kolakovich on November, 15, 2004. Tr. 273. A team approach to healthcare is clearly permissible. *Benton*, 331 F.3d at 1039 (9th Cir. 2003), *see also Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). Additionally, there is no bright line in determining when a treating relationship begins; one visit may suffice. *Benton*, 331 F.3d at 1039. In the context of Kolakovich's treatment at DCMH, Tavakoli is construed as a treating physician.

On November 22, 2004, Kolakovich's attorney requested that Tavakoli submit a statement for the record. Tr. 275. Here, counsel requested that Tavakoli review other entries in Kolakovich's record as well as Tavakoli's own notes. Tavakoli did not indicate that he reviewed

the materials provided, but instead clarified his statements by referring to his own notes and

Kolakovich's treatment at DCMH. Tr. 276 - 278.  These statements are elements of Kolakovich's

opinion as a treating physician.

DCMH physician records produced between January and November 2004 establish

Kolakovich's bipolar diagnosis. Tr. 159, 199, 209 - 213, 255 - 256, 259, 263 - 264, 274, 267.

These records also show improvement throughout this period. *Id.*  In March 2004, Kolakovich

reported mood swings, but clinical examination showed no psychomotor agitation.  Tr. 199.  In

June 2004, Kolakovich reported continuing isolation, but clinical examination showed that he

was "co-operative, goal directed, oriented... He reported feeling depressed, irritable, anxious but

no suicidal orientation or plan.  He denied hallucinations or delusional thinking; his insight and

judgment were felt to be fair." Tr. 267. In  July 2004, Kolakovich's affect was flat, but he was

clear and coherent.  Tr. 263.  An October 2004 assessment by a DCMH nurse practitioner

showed no evidence of hallucination, and specifically noted that "his memory does not appear

impaired."  Tr. 255.  A nurse practitioner is an acceptable medical source when working in

conjunction with a physician. *Gomez*, 74 F.3d at 971.

In particular, Tavakoli's November 15, 2004, entry to the record shows that medication

was effective in stabilizing Kolakovich's moods.  Tr. 273.  Kolakovich submits that this entry

establishes disability due to references to psychomotor agitation, tangential speech, and

pressured speech. (Plaintiff's Opening Brief, 18).  This misconstrues Takavoli's evaluation, as

Takavoli also noted that Kolakovich showed no evidence of delusional thinking and had a neat

appearance and made appropriate eye contact.  Tavakoli also felt that Kolakovich's insight and

judgment appeared to be "fairly good." Tr. 273.

9 - FINDINGS AND RECOMMENDATION

The ALJ need not accept a physician's opinion that is brief, conclusory or inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216.  Here, Tavakoli's treatment notes do not support all of Tavakoli's statements in his November 23, 2004, submission to Kolakovich's attorney.  Tavakoli affirmed that Kolakovich carries a diagnosis of bipolar disorder, citing Kolakovich's treatment history at DCMH between January and November 2004.  Tr. 276.  This finding is based upon DCMH records.  Tr. 273, 276.   In affirming a two-year durational period for Kolakovich's mood disorder, Tavakoli specifically noted that any presumed history of an affective mental disorder prior to January 29, 2004, was based upon Kolakovich's report, extending beyond the duration of DCMH records.  Tr. 276.  This statement is therefore unsupported by DCMH records.  Additionally, if a claimant is found not credible, an ALJ may appropriately disregard statements the claimant made to his physicians. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Tavakoli next affirmed that Kolakovich had a residual disease which would provoke decompensation as a result of marginal environmental adjustment. Tr. 277.  This statement is not supported by records produced by Tavakoli or DCMH.  Tr. 273.  Instead, Tavakoli wrote that "per patient report... his symptoms make it difficult for him to keep a job. He loses his temper [without] any reason."  Tr. 277.  Because this affirmation is again based upon Kolakovich's report rather than Tavakoli's record, it is not sustained. *Tonapetyan*, 242 F.3d at 1148.

Finally, Tavakoli affirmed that Kolakovich would be unable to function outside of a highly supportive living arrangement.  Tr. 277.  Tavakoli offers no support for this affirmation. *Id.*  Therefore, this conclusion is not supported by the record. *Bayliss*, 427 F.3d at 1216.  Any subsequent discussion regarding the living environment at the Roseburg Rescue Mission is

10 - FINDINGS AND RECOMMENDATION

unnecessary.

In rejecting Tavakoli's opinion, the ALJ noted that Kolakovich's attorney obtained Tavakoli's November 23, 2004, statement. Tr. 19, 275. This is not a sufficient reason for dismissing a physician's testimony. *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996).

For the reasons above, Tavakoli's status as a treating physician is established. Tavakoli's letter for the record  regarding Kolakovich's bipolar diagnosis between January and November 2004 is supported by  treatment notes. Tavakoli's comments regarding an earlier onset of Kolakovich's diagnosis, any projected decompensation and an alleged need for a highly supportive living environment are based upon Kolakovich's report and unsupported by treatment records.   These comments are thus entitled to little weight. *Bayliss*,  427 F.3d at 1216, *Tonapetyan*, 242 F.3d at 1148. The ALJ's error in rejecting Tavakoli's November 23, 2004, letter to the record  is therefore harmless. This court should not overturn an ALJ's finding based upon harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).


**b.  Reviewing Psychologist Dr. LeBray**

Kolakovich contends the ALJ should not have given greater weight to the March 2004 opinion of reviewing psychologist Peter LeBray, Ph.D.  In noting the findings of "DDS staff," the ALJ did not assign greater weight to LeBray than DCMH physicians. Tr. 17.

To the extent that the ALJ did consider LeBray's suggestion that Kolakovich would improve by November 2004, the ALJ did not find LeBray's conclusions contradictory to Kolakovich's treating physicians. Tr.  17.

Generally, a treating physician's opinion is entitled to more weight than that of an

examining or reviewing physician.  *Edlund*, 253 F.3d at 1157.  Dr. LeBray suggested that

Kolakovich was markedly limited in maintaining social functioning and concentration,

persistence and pace in March 2004.  Tr. 165, 175.  This corresponds with the medical evidence

and treatment notes produced by DCMH in January and February 2004.  Tr. 199, 209 - 213.

LeBray predicted that Kolakovich would not be markedly limited in November 2004.  Tr.  175.

DCMH notes for November 2004 support, rather than contradict,  this prediction, showing

Kolakovich's moods were stabilizing, as noted above.  Tr. 199, 210 - 213.   Because Tavakoli's

suggested limitations cited in the November 23, 2004, statement are not supported by his own

notes, LeBray's prediction does not contradict established medical evidence regarding

Kolakovich's status in November 2004.

 For this reason, LeBray's review does not contradict supported limitations suggested by

treating physicians at DCMH, including Tavakoli.  Tr. 175.  Any emphasis accorded DDS staff

by the ALJ is thus harmless. This court will not overturn an ALJ's decision for harmless error.

*Burch*, 400 F.3d at 679.

### c.  Evaluating Psychologist Dr. Kirkendall

 Kolakovich submits that the ALJ erroneously discredited Dr. Kirkendall's opinion.  The

ALJ considered Kirkendall's findings at length, noting Kirkendall's clinical observations,

including a mood disturbance at interview, an antisocial personality, and a limited attention span.

Tr. 18.  The ALJ then suggested Kirkendall's findings were possibly invalid due to

"indifference." Tr. 18. The ALJ also questioned Kirkendall's GAF[2] analysis, indicating that

---

 [2]'GAF' refers to "Global Assessment of Functioning," a scale reporting a clinician's
judgment of the patients overall level of functioning on a scale of 1 to 100.  *Diagnostic and*

Kolakovich's negative "history of stable and responsible behavior" is based upon Kolakovich's criminal behavior rather than an inability to sustain employment. Tr. 18.  The ALJ concluded that Kirkendell's "report suggesting that the claimant's mental problems preexisting his December 2003 hospitalization reflect [sic] disabling loss of function is not accepted as reliable." Tr. 18.  Contrary to Kolakovich's submission, the ALJ did not reject Kirkendall's report in its entirety, instead relying on the findings regarding Kolakovich's present mood.  *Id.*

Kirkendall apparently evaluated Kolakovich in March 2004, and submitted an undated report. Tr. 159 - 164.  Kirkendall's clinical evaluation suggested Kolakovich's intelligence is average, but found his attention span inadequate.   Tr. 164.  Based upon his examination, Kirkendall diagnosed bipolar disorder and a schizoid personality disorder.  Tr. 163.  He noted Kolakovich's reported daily activities and Kolakovich's social isolation. Tr. 162.  Kirkendall assigned Kolakovich a GAF score of 35 "for the past year."  Tr. 163.

Kirkendall based his mental status exam upon clinical evaluation.  Tr. 161.   This examination is supported by Kirkendall's notes and clinical findings and constitutes an acceptable medical source.  Tr. 161, *Bayliss*, 427 F.3d at 1216.  Kirkendall's GAF assessment encompassing the past year and Kirkendall's prediction regarding Kolakovich's deterioration with age are based upon Takavoli's report and are not supported by clinical evaluation.  Tr. 163. For these reasons, the ALJ was appropriate in rejecting Kirkendall's GAF analysis and findings regarding Kolakovich's reported activities.  *Bayliss*,  427 F.3d at 1216, *Tonapetyan*, 242 F.3d at 1148.

---

*Statistical Manual of Mental Disorders* (4th ed. 1994) 30 - 32.

### 3. Lay Witness Testimony

Kolakovich argues that lay witness testimony submitted to the record by Douglas Crince and Jim Fletcher establish disability and should be credited.

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918 - 919 (9th Cir. 1993). The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467.

### a. Douglas Crince

In November 2004, Douglas Crince, Kolakovich's supervisor at the Roseburg Rescue Mission, wrote a letter to the record. Tr. 140. Crince reported that in performing kitchen duties, Kolakovich frequently demonstrated temper tantrums and is often, "sullen, moody or even argumentative." Tr. 140. Crince also suggested Kolakovich is on occasion paranoid and often isolates himself from others. Tr. 140. Crince concluded,

> I must emphasize that while Nick is in no way an immediate danger to anyone, his mental condition and [in]stability makes him very offputting and though the medications he is taking has improved his condition slightly, he is however, nowhere near "socially normal" or functional.

Tr. 140.

The ALJ cited Crince's testimony and did not explicitly disregard it. Tr. 20.

Because the ALJ did not reject Crince's testimony outright and without comment, the ALJ's consideration of Crince's testimony should be sustained. *Nguyen*, 100 F.3d at 1467.

Any lay witness testimony credited must show overwhelming support of "deficiencies of concentration, persistence or pace," resulting in "frequent" or "continual" failure to complete work-related tasks. *Schneider v. Commissioner*, 223 F.3d 968, 976 (9th Cir. 2000). Crince describes Kolakovich's temper and character and does not present such evidence. Tr. 140. This does not meet the *Schneider* standard, and there is thus no reason to credit Crince's testimony. *Schneider*, 223 F.3d 978, 975 - 976 (9th Cir. 2000).

**b.    Jim Fletcher**

Kolakovich also submits the ALJ erroneously rejected third party statements submitted to the record by his co-worker, Jim Fletcher. Fletcher suggested Kolakovich isolates himself, has difficulty sleeping, concentrating, and remembering to shave and dress, exhibits erratic mood swings, and does not handle stress well. Tr. 92 - 100. Fletcher noted that Kolakovich isolates, "except when performing duties required to sleep here [at the Mission]." Tr. 92. Contrary to Kolakovich's submission, Fletcher did not suggest that Kolakovich suffered deficiencies of concentration, persistence, and pace in a work setting. Tr. 92. The ALJ did not consider Fletcher's statement in his decision.

The Commissioner concedes that the ALJ should have considered Fletcher's testimony. In rejecting lay witness testimony, the ALJ must give germane reasons. *Nguyen*, 100 F.3d at 1467. Recent jurisprudence suggests that silent omission of lay witness testimony regarding a claimant's functioning in a work environment is not harmless. *Stout v. Commissioner, Social Security Administration*, __ F.3d ___, 2006 WL 2052306 at *5 (9th Cir. 2006). However, the

ALJ is not required to assign weight to each piece of evidence in the record, and is not required to explain rejection of evidence neither significant nor probative. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

A reviewing court may not consider an ALJ's disregard of lay witness testimony favorable to the claimant harmless unless "it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout* at *5. Such is the case here. Fletcher made no specific observations of Kolakovich's behavior in a work setting. Tr. 92. Fletcher's observations regarding Kolakovich's isolation, mood swings, and reduced stress tolerance are reflected elsewhere in the record and included in the ALJ's RFC assessment. Fletcher's observations regarding Kolakovich's alleged deficiencies in concentration are not supported by the medical record. For these reasons rejection of Fletcher's observations is harmless. *See Batson*, 359 F.3d at 1197. This court will not reverse for harmless error. *Burch*, 400 F.3d at 679.

## 4.  The ALJ's Step Four Finding

Kolakovich suggests the ALJ erred in finding he could return to his past relevant work as a dishwasher and "sweeper/cleaner." Tr. 23. In considering whether Kolakovich could return to this work, the ALJ solicited testimony from a vocational expert (VE). Tr. 332 - 335. In formatting his hypothetical questions to the VE, the ALJ included limitations supported by the medical evidence. Tr. 333 - 334. In making his findings based upon VE testimony, the ALJ did not include additional limitations suggested by Kolakovich's counsel, such as an alleged complete inability to tolerate any workplace supervision. Tr. 335. The VE stated that a hypothetical individual with Kolakovich's medically supported RFC could return to his past

16 - FINDINGS AND RECOMMENDATION

relevant work as a dishwasher or sweeper/cleaner.  Tr. 334.

The ALJ is not required to include unsupported limitations in his hypothetical questions to a VE.  *Osenbeck v. Apfel*, 240 F.3d 1157, 1163 - 1165 (9th Cir. 2001).  For the reasons established above, Kolakovich failed to show substantive error in the RFC assessment.  The ALJ appropriately relied upon this RFC and the VE's testimony in his step four finding.  *Id.* Kolakovich fails to show error in the ALJ's step four conclusion.

## CONCLUSION

I find that the Commissioner's decision that Kolakovich did not suffer from disability and is not entitled to benefits under Titles II  and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence.  I recommend the Commissioner's final decision be AFFIRMED and the case DISMISSED.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due August 21, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

Dated this 4th day of August, 2006.

_____/s/Donald C. Ashmanskas_____
Donald C. Ashmanskas
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION